IN THE MATTER OF ROBIN GAY POTTS

No. 7218DC359

(Filed 24 May 1972)

1. Evidence § 31— best evidence — photostatic copy

The admission in a juvenile delinquency proceeding of a photostatic copy of a statement signed by two witnesses did not violate the best evidence rule where the contents of the statement were not in question and the statement was not a vital part of the State's evidence.

2. Witnesses § 4— impeachment of party's own witness

The admission in a juvenile delinquency hearing of a photostatic copy of a statement signed by two State's witnesses did not violate the rule prohibiting a party from impeaching his own witness, where the statement corroborates each of the two witnesses in part and does not specifically contradict any portion of their testimony.

3. **Infants § 10— juvenile delinquency hearing — presence of newspaper reporter**

No abuse of discretion has been shown by the fact that a newspaper reporter was present during a juvenile delinquency hearing. G.S. 7A-285.

4. **Infants § 10— commitment of juvenile — best interest of child — specific finding**

Court's order committing a juvenile to the care of the State Board of Youth Development was not fatally defective in failing to contain a specific finding that such disposition was in the best interest of the child.

5. **Infants § 10— commitment of juvenile — best interest of child — court's statement**

Trial court's statement, in announcing the commitment of a juvenile to the custody of the State Board of Youth Development, that "If the schools are to operate, it is necessary that those in charge be respected. The courts cannot tolerate attacks on public school teachers by students," does not indicate that the court did not consider the best interest of the child in making such disposition.

6. **Infants § 10— juvenile hearing — absence of solicitor**

Contention by a juvenile who was represented by counsel that the trial court erred in proceeding with a delinquency hearing in the absence of the solicitor in that the court was cast in the role of a prosecutor *is held* without merit where the record shows that someone other than the judge examined witnesses of both the petitioner and the juvenile, and that the questions asked by the court were fair and demonstrated no bias.

APPEAL by Robin Gay Potts from *Gentry, District Judge,* 15 December 1971 Session of District Court held in GUILFORD County.

A summons signed by a deputy clerk of the superior court directed to Mrs. Rebecca Potts, as mother, was properly served on 9 December 1971 giving notice of a hearing in the district court on 15 December 1971. Attached thereto was a petition dated 8 December 1971 and signed by a member of the Youth Division of the Greensboro Police Department, asserting that Robin Gay Potts, a child less than 16 years of age, was "a delinquent child as defined by G.S. 7A-278(2), in that, at and in the county named above, and on or about the 8th day of December, 1971, the child did unlawfully and wilfully assault Judy Ann Wall, teacher at Jackson Junior High School, Greensboro, North Carolina, by striking her about the face and head with

her hands and fist and by biting her in the back, inflicting injury requiring medical attention. This offense charged herein is in violation of G.S. 14-33(a)."

The district court, in the exercise of its juvenile jurisdiction, found upon competent evidence that Robin Gay Potts (child) was under the age of sixteen years and was under the supervision and control of her mother, Mrs. Rebecca Potts; that about 10:30 a.m. on or about 8 December 1971 and while classes were being changed at Jackson Junior High School, the child came up to Mrs. Judy Wall, who was in a hallway and was in the process of correcting two other students, Robert Potts and Duncan McCrae, who were misbehaving (Robert testified that he was not a relative of the child but had visited in her home) ; and that without any provocation whatsoever, the child began to attack Mrs. Wall, striking her about the face and body with her hands and biting her in the back. As a result of the attack by the child, Mrs. Wall was required to seek medical attention and had to remain away from school for the remainder of the day. Mrs. Wall did not teach the child and had had no previous contact with her. The court further found that the child was a delinquent within the meaning of the law; that she was in need of the discipline and supervision of the State; and that she had been expelled from school on account of this unprovoked assault. The court ordered that the child be committed to the State Board of Youth Development and remain under the custody, control and supervision of the officials thereof until discharged as provided by law.

The child, who had been represented by counsel throughout the hearing, gave notice of appeal, whereupon the court, on 20 December 1971, found that it was for the best interest of the child and her general welfare, as well as for the best interest of the State, that the Order of Commitment should not be stayed and ordered her commitment to be effective immediately. On 22 December 1971, the court conducted another hearing in the matter and under date of 31 December 1971 entered an order rescinding the order of immediate commitment, placing the child in the temporary custody of her mother pending decision of her appeal by the Court of Appeals, and ordering her to attend a designated school.

---

In re Potts

---

*Attorney General Morgan and Assistant Attorney General Icenhour for the State.*

*Smith, Patterson, Follin & Curtis by Norman B. Smith and Michael K. Curtis, and Lee, High, Taylor & Dansby by Leon Stanback, Jr., for Robin Gay Potts, appellant.*

MALLARD, Chief Judge.

[1] The first question presented by appellant is whether the court erred in admitting into evidence a photostatic copy of a statement signed by two of the witnesses. Appellant contends that the admission thereof contravened both the best evidence rule and the rule prohibiting a party from impeaching his own witness.

"The best evidence rule applies only where the *contents* or *terms* of a document are in question. * * *

Even where the contents of the document are in question, production is not required if the writing is only collaterally involved in the case. * * * " Stansbury, N. C. Evidence 2d, § 191.

In the case before us, Mr. Clyde Tesh testified that he was Principal of the Jackson Junior High School, that Mrs. Wall was one of his teachers, and that Robert Potts (Robert) and Duncan McCrae (Duncan) had told him that they wanted to give him a statement, which, after Tesh had put it in writing, each of them signed. A photostatic copy of the original statement was admitted in evidence. Robert and Duncan each testified with respect thereto that "(t)his photostatic copy of a statement was read to me by Mr. Tesh, and I signed it." Therefore, the contents or terms of the statement were not in question, and in addition were not a vital part of the State's evidence. Under these circumstances, the best evidence rule was not violated and the court did not by reason thereof commit prejudicial error in admitting the photostatic copy into evidence.

[2] "It is well established in this jurisdiction that a party cannot introduce testimony to impeach or discredit the character of his witness . . . . Yet, if the witness testified to facts against the State's contentions, the State is not precluded from showing the facts to be other than as testiifed to by the witness. * * * " *State v. Horton,* 275 N.C. 651, 170 S.E. 2d 466

(1969), *cert. denied,* 398 U.S. 959, *reh. denied,* 400 U.S. 857. See also, *State v. Cohoon,* 206 N.C. 388, 174 S.E. 91 (1934).

The testimony of Mrs. Wall, Mr. Clendenin, Duncan, Robert and Mr. Tesh is listed under "Petitioner's Evidence." The photostatic copy of the statement that Robert and Duncan testified they signed does not tend to impeach them; in fact, it tends, in part, to corroborate them. The statement is dated 8 December 1971 and reads as follows:

"Playing in hall—pushing each other—Duncan ran, Robert chased, Duncan ran into Mrs. Wall.

Mrs. Wall talked to two boys—gave a little tap on shoulder, told to go on to class.

Robin grabbed Robert's arm, said come on. Mrs. Wall removed Robin's arm from Robert, told her that she & Robert were talking, none of Robin's business.

Robin got mad, jumped on Mrs. Wall."

This photostatic statement does not corroborate all of the testimony of Duncan or Robert at the trial; however, it does corroborate each of them in part and does not specifically impeach, contradict or discredit any specific portion of their testimony, with the possible exception of Duncan's testimony, "I did not see what happened after Mrs. Wall told Robin to go on." But even this is not a specific contradiction of his statement that he did not see Robin "jump on" Mrs. Wall. Mrs. Wall's testimony that she did not shove the child into the water cooler is contradicted by the testimony of Robert that she did, yet this does not violate the rule which prohibits impeachment of one's own witness but permits a party to show the facts to be other than as testified to by his witness. *State v. Horton, supra.* Also in cases heard by a judge without a jury, there is a presumption, nothing else appearing, that the judge disregarded incompetent evidence. We hold therefore that the judge did not commit prejudicial error in admitting the photostatic copy of the statement itself in evidence.

[3]  The next question presented by appellant is whether the exclusion of the public is mandatory in juvenile proceedings in the district court. The pertinent part of G.S. 7A-285 reads as follows: "The general public *may* be excluded from any juvenile hearing *in the discretion of the judge.*" (Emphasis added.) This

makes it a discretionary matter with the trial judge whether the general public (which includes newspaper reporters) is excluded from the hearing. On the record before us, no abuse of discretion or prejudicial error is shown by the fact that a newspaper reporter was present during the hearing.

[4] Appellant raises the question of whether the court, after having found the child to be delinquent, properly committed her to the custody, control and supervision of the officials of the State Board of Youth Development. The appellant argues that the court failed to find that such disposition was in the best interest of the child and that its order is therefore fatally defective. This contention is without merit because it overlooks the applicable statutes and case law and ignores the finding by the court that the child "is a delinquent child within the meaning of the law and that she is in need of the discipline and supervision of the state." See *In re Burrus*, 275 N.C. 517, 169 S.E. 2d 879 (1969), *affirmed*, 403 U.S. 528, 29 L.Ed. 2d 647, 91 S.Ct. 1976; *In re Whichard*, 8 N.C. App. 154, 174 S.E. 2d 281 (1970), *appeal dismissed*, 276 N.C. 727; and G.S. 7A-285 and G.S. 7A-286.

[5] The record reveals that at the conclusion of the adjudicatory part of the hearing, the court proceeded to the disposition of the child as authorized by the provisions of G.S. 7A-285. In announcing the disposition, the court said:

"If the schools are to operate, it is necessary that those in charge be respected. The courts cannot tolerate attacks on public school teachers by students."

The defendant contends that this statement and the order entered indicate that the interest of the child was not considered in the final decision. No law-abiding American citizen can logically argue otherwise than that public school teachers must be protected from attack by unruly, undisciplined and unrestrained students. The judge found, upon competent evidence, that this incident was an unprovoked attack by the child upon the teacher and that the child was a delinquent. The law imposed upon him the duty to make proper disposition of the child. In making such disposition, the statute, G.S. 7A-286, provides that "(t)he judge shall select the disposition which provides for the *protection, treatment, rehabilitation or correction* of the child after considering the factual evidence, the needs of the

child, and the available resources, as may be appropriate in each case." (Emphasis added.) The appellant's argument that the interest of the child was not considered in the final disposition is not supported by the record, the factual evidence, or the demonstrated needs of the child.

[6] The last question presented by appellant is whether the court properly proceeded with the juvenile hearing in the absence of the solicitor.

G.S. 7A-61 reads in part: " . . . (T)he solicitor shall . . . represent the State in juvenile cases in which the juvenile is represented by an attorney." In this case the child was represented by an attorney. It also appears of record that there was present at the hearing " . . . Mr. William Caffrey, private counsel representing Mrs. Wall as legal advisor, but (who) did not participate in the case in the capacity of the prosecuting attorney . . . . " The appellant now argues that because the solicitor did not represent "the State" the judge was cast in the role of prosecutor. We do not think that this record supports this conclusion. The record reveals that someone other than the judge examined the petitioner's, as well as the child's, witnesses and that most of the witnesses were asked some but not many clarifying questions by the judge in that portion of the record entitled, "Cross Examination by the Court."

In *State v. Rush,* 13 N.C. App. 539, 186 S.E. 2d 595 (1972), it is said:

" * * * The purpose of Article 23 as set out in G.S. 7A-277 is 'to provide procedures and resources for children under the age of sixteen years which are different in purpose and philosophy from the procedures applicable to criminal cases involving adults.' See *In re Whichard,* 8 N.C. App. 154, 174 S.E. 2d 281, *appeal dismissed* 276 N.C. 727 (1970). G.S. 7A-285 provides that 'The Juvenile hearing shall be a simple judicial process designed to adjudicate the existence or nonexistence of any of the conditions defined by G.S. 7A-278(1) through (5) which have been alleged to exist, . . . ' We believe the informal procedure contemplated by the statute allows the questioning of witnesses by the trial judge to elicit relevant testimony and to aid in arriving at the truth. * * * "

As in *Rush,* we think the judge in this case (who was the same judge that tried the *Rush* case) was fair and judicious in the asking of questions and that no judicial bias is shown on this record. It further appears to us that the judge performed the duty required of him by G.S. 7A-285 that " . . . the judge shall find the facts and shall protect the rights of the child and his parents in order to assure due process of law. . . . "

We hold that all of the parties were properly before the court, after proper notice and upon a petition invoking the jurisdiction of the court, that all parties offered evidence and participated in the hearing, the child was represented by counsel, that the basic requirements of due process were met, and that no prejudicial error appears on this record.

The judgment of the district court is affirmed.


Affirmed.

Judges CAMPBELL and BROCK concur.